UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTE RAMIREZ, individually and as a representative of the Estate of ROBERTO BALDIZON, Deceased; ANA JUSCAMAITA, individually and as a representative of the Estate of ROBERTO BALDIZON, Deceased; and THE ESTATE of ROBERTO BALDIZON,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY MACOMBER, individually and in his official capacity as Former Warden of California State Prison-Sacramento and DOES 1 through 100, inclusive, in their official and personal/individual capacities,<br><br>Defendants. | CIV. NO. 2:17-00228 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

Plaintiffs Janette Ramirez and Ana Juscamaita, individually and as representatives of the Estate of Roberto Baldizon (collectively "plaintiffs"), brought this action against defendants Jeffrey Macomber and Does 1-100 ("defendants") for

1

money damages alleging violations of federal law arising out of the death of Roberto Baldizon ("decedent"), who was killed by his cellmate at California State Prison-Sacramento ("Sacramento Prison"). The matter is now before the court on defendant Jeffrey Macomber's Motion to dismiss the Third Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 24.)

I. Procedural and Factual Background

Plaintiff Janette Ramirez is Baldizon's sibling, and plaintiff Ana Juscamaita is Baldizon's mother. (Third Am. Compl. ("TAC") ¶ 5 (Docket No. 29).) Defendant Jeffrey Macomber was employed by the California Department of Corrections and Rehabilitation ("Department of Corrections"), acting as Warden of the Sacramento Prison, a state run prison under the Department of Corrections. (TAC ¶ 6.) As Warden, plaintiffs assert defendant was responsible for the oversight, maintenance, and policy making decisions of the Sacramento Prison as well as the supervision, training, and hiring of employees. (TAC ¶ 8.)

From around December 2014 to February 2015, Baldizon was an inmate at the Sacramento Prison. (See TAC ¶¶ 14, 16.) Baldizon suffered from severe mental health issues, including bipolar disorder, schizophrenia, and agoraphobia. (TAC ¶ 13.) Sometime in January 2015, Baldizon was physically attacked by an unnamed cellmate. (TAC ¶ 13.) After the attack, Baldizon was assigned a new cellmate, Antolin Cepeda. (TAC ¶ 16.) Plaintiffs allege that Baldizon complained both to his family and defendants that he was unsafe and feared for his life at the Sacramento

2

Prison. (TAC ¶ 17.) Plaintiffs allege that despite his complaints and the previous attack by a Sacramento Prison cellmate, defendants did not address his concerns. (See id.)

On February 3, 2015, Baldizon was stabbed and killed by Antolin Cepeda. (TAC ¶ 18.) Plaintiffs allege other inmates attempted to notify Doe defendants of the assault to procure their assistance. (TAC ¶ 19) Plaintiffs allege that during the time the assault went undiscovered, Baldizon could have received lifesaving treatment. (Id.)

On September 28, 2018, plaintiffs filed a Third Amended Complaint against defendants pursuant to 42 U.S.C. § 1983 for: (1) violation of Baldizon's constitutional rights to reasonable security and access to medical care and treatment under the Eighth Amendment's prohibition against cruel and unusual punishment; (2) violation of decedent's civil rights--a survival claim, alleging decedent was forced to endure great pain and suffering before his death; and (3) violation of the right to familial relationship under the Fourteenth Amendment of the United States Constitution.[1] (TAC ¶¶ 21-36.) Plaintiffs sue defendant Macomber in both his individual and official capacities for his own allegedly culpable action or inaction in the training, supervision or control of his subordinates, or for the acquiescence in the constitutional deprivations alleged, or for

---

[1] Plaintiff states that she does not allege any counts under California law and that the language in the Third Amended Complaint, namely "Article I, Section 7(a) and 17 of the California Constitution, and under the common law of the State of California . . ." can be struck. (Pls.' Opp'n at 11 (Docket No. 37).) Thus, the court will strike this allegation.

3

conduct that showed a reckless or callous indifference to the rights of others. (TAC ¶ 8.) As a result of defendant's alleged conduct, plaintiffs seek money damages, including punitive damages, as well as reasonable attorney's fees. (TAC Prayer for Relief at 10-11.)

II. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000).

A. Official Capacity Liability

As an initial matter, plaintiffs seek damages against defendant in both his official and individual capacity. (TAC ¶ 8.) Generally when a plaintiff seeks damages against an officer, the suit is against the officer in his individual capacity; if the plaintiff seeks an injunction, the suit is generally against the officer in his official capacity. As the Supreme Court has explained "[o]fficial-capacity suits . . . generally represent

4

only another way of pleading an action against an entity of which an officer is an agent . . . . Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Moreover, "state officers named in their official capacities are immune from suits for damages in federal court (for federal or state law claims) under the doctrine of state sovereign immunity and the Eleventh Amendment, and are not 'persons' subject to suit under 42 U.S.C. § 1983 (in federal or state court)." Silverbrand v. Woodford, Civ. No. 06-3253-R(CW), 2010 WL 3635780, at *4 (C.D. Cal. Aug. 18, 2010) (citations omitted). Therefore, defendant is not liable and the court dismisses the § 1983 claims against him in his official capacity. The court proceeds with plaintiffs' claims against defendant in his individual capacity.

### B. Individual Capacity Liability

#### 1. Supervisory Liability

Plaintiffs purport to hold defendant liable in his individual capacity as a supervisor at the Sacramento Prison. (See TAC ¶ 9.) A supervisor may be held liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). Furthermore, "[a] plaintiff must show the supervisor

breached a duty to plaintiff which was the proximate cause of the injury." Starr, 652 F.3d at 1207. To be liable, a supervisor does not have to be physically present when the constitutional injury was inflicted; rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." Id. at 1205-06 (citing Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)). Additionally, "[t]he sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D. Cal. 2004) (quoting Hansen, 885 F.2d at 646). Whether plaintiffs state a claim against defendant in his individual capacity will be considered in the context of supervisory liability.

2. Cruel and Unusual Punishment under the Eighth Amendment

    a.   Right to Reasonable Security

Prison officials have a duty to protect prisoners from violence at the hands of other inmates. Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (citations and quotations omitted). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate

6

indifference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To be liable, the official must "know[] of and disregard[] an excessive risk to inmate health or safety: the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 587. See also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (stating "deliberate indifference" standard requires proving some degree of "individual culpability").[2]

Plaintiffs appear to have two different theories as to why defendant is liable for failure to protect Baldizon. First, plaintiffs allege that it was against Department of Corrections and Sacramento Prison policy for Baldizon to be housed with Antolin Cepeda. (Compl. ¶ 16.) Specifically, plaintiffs argue that under these policies prison officials are supposed to place the victim of an assault on single cell status, investigate the assault, make informed decisions about whether the victim is at risk for future assaults, and, if so, determine how best to protect the individual within the prison setting. (Pls.' Opp'n at 7.) Thus, plaintiffs allege that defendant's affirmative conduct involves his failure to ensure enforcement of policies,

---

[2] In plaintiffs' opposition, plaintiffs cite Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016), for the elements of a failure-to-protect claim. However, Castro sets the standard for failure-to-protect for a pretrial detainee. Here, defendant was not a pretrial detainee and thus the Castro standard does not apply.

7

rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict constitutional injury.[3] (TAC ¶ 8.) However, plaintiffs have not alleged sufficient factual allegations from which the court may infer defendant acted either intentionally or with deliberate indifference. See Leer, 844 F.2d at 634. Plaintiffs do not plead sufficient factual allegations to establish that defendant was aware of previous incidents of violence, the need to enforce prison policies, or that prison officials were endangering inmates. See Hydrick v. Hunter, 669 F.3d 937 (9th 2012) (citing Starr, 652 F.3d at 1206-07) ("Even under a 'deliberate indifference' theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates."); Henry A. v. Willden, 678 F.3d 991, 1004 (9th Cir. 2012) (finding allegation of supervisory liability insufficient were complaint "does not allege . . . any personal knowledge of the specific constitutional violations that led to Plaintiffs' injuries.") Compare Starr, 652 F.3d at 1208-12 (finding complaint sufficient to allege supervisory liability against Sheriff, where Sheriff was given notice of previous incidents of violence and did not

---

[3] Furthermore, a failure to follow a state regulation or prison policy itself does not amount to a constitutional violation. See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation") (citation omitted); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [defendant] violated his constitutional right . . . .").

8

take action to protect inmates despite the dangers created by the action of his subordinates of which he had been made aware).[4]

Under plaintiffs' alternate theory, plaintiffs state defendant was responsible for the "supervision, training and hiring of persons and employees working" within the Sacramento Prison. (Compl. ¶ 8.) Here, plaintiffs allege that defendant maintained customs or practices that posed a substantial risk of harm to inmates including: (a) improper classification of inmates; improper housing of inmates; (b) inadequate staffing of custody positions to provide reasonable security to inmates; (c) failure to provide reasonable security and/or prevent the abuse of inmates by other inmates; (d) failure to supervise, investigate and take corrective actions in incidents of failure to provide reasonable security and/or prevent abuse resulting in inmate on inmate violence; (e) condoning lax supervision by prison officials who fail to report or investigate reports of inmate on inmate violence; (f) ratifying wrongful conduct of and by prison officials that result in serious injury or death in inmates, civil litigation, judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct. (Compl. ¶ 25.) These alleged policies and

---

[4] Plaintiff alleges no facts showing defendant was aware that Baldizon was concerned for his safety. Plaintiffs allege that decedent "complained both to his family and [d]efendants [that] he was unsafe and feared for life" at the Sacramento Prison. (TAC ¶ 17.) However, "[P]laintiffs may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Williams v. Fresno Cty. Dist. Attorney's Office, No. 1:16-00734 DAD MJS, 2016 WL 5158943, at *3 (E.D. Cal. Sept. 20, 2016) (Seng, J.) (citing Leer, 844 F.2d at 634).

9

customs maintained by defendant are unsupported by factual allegations as plaintiffs do not specify how the defendant's training, supervision, or hiring was deficient. See Moss v. U.S. Secret Servs., 711 F.3d 941, 968 (9th Cir. 2013) (finding plaintiffs' supervisory claim conclusory where "[t]he protestors claim that 'the use of overwhelming and constitutionally excessive force against them' was 'the result of inadequate and improper training, supervision, instruction and discipline ... under the personal direction . . . of the . . . Police Defendants . . . . The protestors allege no facts whatsoever about the officers' training or supervision, nor do they specify in what way any such training was deficient.")

For the above stated reasons, the court grants defendant's Motion to dismiss plaintiffs' claim that defendant violated Baldizon's constitutional right to reasonable security protected under the Eighth Amendment's prohibition against cruel and unusual punishment

    b. Right to Adequate Medical Care and Treatment

The Eighth Amendment imposes a duty on prison officials to ensure inmates receive adequate medical care. Farmer, 511 U.S. at 832 (citations omitted). To state a claim under 42 U.S.C. § 1983 for a violation of the Eight Amendment based on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations omitted). A plaintiff may show a serious medical need by demonstrating that "the failure to treat a prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain".[5] McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (citation and quotations omitted). To be deliberately indifferent, "a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." Id. at 1060.

Here, plaintiffs allege that after the assault, other inmates attempted to notify prison officials to come to the assistance of Baldizon. (TAC ¶ 19.) However, plaintiffs do not allege that defendant was actually notified by inmates about the assault or had any knowledge that Baldizon was stabbed, left in his cell, and awaiting medical treatment. See Baldhosky v. Hubbard, et. al., Civ. No. 1:12-01200 LJO MJS PC, 2017 WL 5998198, at *7 (E.D. Cal. Dec. 4, 2017) (Seng, J.) ("Under § 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights."); Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (stating "the complaint falls short in some places [] tying its factual allegations to particular defendants."). Moreover, plaintiffs' assertion that defendant's failure to train or supervise his subordinates caused the delay in response to the incident is conclusory and fails to allege either personal involvement or a sufficient causal connection between defendant's conduct, failure to train or supervise, and the constitutional deprivation--

---

[5] Here, the parties do not dispute that plaintiffs sufficiently allege a serious medical need.

11

inadequate medical care. (Pls.' Opp'n at 11.)

Because the Third Amended Complaint relies on conclusory allegations and lacks sufficient factual content, the court grants defendant's Motion to dismiss plaintiffs' claim that he violated Baldizon's constitutional right to access medical care and treatment protected under the Eighth Amendment's prohibition against cruel and unusual punishment. See <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.")

### 3. Survival Action

Plaintiffs also bring a § 1983 survival claim stating Baldizon "was forced to endure great conscious pain and suffering before his death." (TAC ¶ 31.) Plaintiffs seek to recover damages pursuant to Baldizon's right of survivorship for the pain and suffering he endured as a result of the defendant's alleged deliberate indifference and violation of his civil rights. (TAC ¶ 39.) Because the court determined that plaintiffs have not stated a claim for an underlying constitutional violation, the court dismisses this cause of action.

### 4. Familial Relationship

To bring a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States. See <u>West v. Atkins</u>, 487 U.S. 42, 58 (1988) (citations omitted). However, plaintiffs' Fourteenth Amendment rights to the companionship of Baldizon, derive from Baldizon's constitutional rights. See <u>Estate of Torres v. Terhune</u>, Civ. No.

98-2211 WBS GGH, 2002 WL 32107951, at *8 (E.D. Cal. Jan. 9, 2002). Because the court has determined that plaintiffs have not stated a claim for an underlying constitutional violation, the court will dismiss plaintiffs' Fourteenth Amendment right to familial association claim.

### 5. Punitive Damages

In a § 1983 case, punitive damages are permitted "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Here, plaintiff has neither stated a claim that defendant violated the plaintiffs' right nor properly alleged that defendant acted with "evil motive or intent," nor pled sufficient facts to establish "reckless or callous indifference to the federally protected rights of others." Thus, plaintiffs have not stated a claim sufficient to recover punitive damages.

IT IS THEREFORE ORDERED that defendant Macomber's motion to dismiss be (Docket No. 24), and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file a First Amended Complaint, if they can do so consistent with this Order.

Dated: December 18, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE